Thomas J. McLAIN, Plaintiff,

v.

CAROLINA POWER & LIGHT COM-
PANY, Defendant.

Civ. A. No. 6379.

United States District Court
E. D. South Carolina,
Columbia Division.

April 23, 1959.

James P. Mozingo, III, Darlington, S. C., William E. Chandler, Jr., Columbia, S. C., for plaintiff.

D. W. Robinson, Robinson, McFadden & Dreher, Columbia, S. C., A. Y. Arledge, Raleigh, N. C., for defendant.

TIMMERMAN, District Judge.

The Court has for consideration the motion of the defendant, under Rule 12 (b) (6), Fed.Rules Civ.Proc. 28 U.S.C.A., to dismiss this action and, under Rule 56, for entry of summary judgment in its favor. As to the first prong of the motion, to dismiss for "failure to state a claim upon which relief can be granted", the facts are substantially as follows: The plaintiff was injured while employed by the Sumter Builders, Inc., an independent contractor engaged in constructing a power line for the defendant. The plaintiff was covered by the South Carolina Workmen's Compensation Law and he was awarded compensation for injuries received by him in the course of his employment. The National Surety Corporation, not a party to this action, was the insurance carrier of the Sumter Company and paid the compensation awarded to plaintiff. On several occasions a representative of plaintiff conferred with an agent of the insurance carrier about instituting suit against the Carolina Power & Light Company, defendant herein, it being claimed that plaintiff's injuries were proximately caused by negligent acts of said third party. They do not agree in all respects as to what transpired between them at their numerous conferences, but they do agree that the conferences were about bringing an action in the name of plaintiff or the insurance carrier against the defendant, the third party, to recover damages for injuries wrongly inflicted on plaintiff by defendant. Prior to the conferences the insurance carrier had closed its file in the case and it never reopened the file. This clearly indicates that the insurance carrier had no intention of instituting an action against the defendant to protect plaintiff's claim against it. Only one week remained before the statute of limitations would have barred the claim when plaintiff commenced this action to protect the right of action that the insurance carrier refused to protect.

Defendant contends that plaintiff's right of action against the defendant, the third party, for the injuries inflicted on him, was lost by plaintiff's failure to request the insurance carrier in writing to institute the action.

There is no doubt that, under the Workmen's Compensation Act, the insurance carrier, upon paying the required compensation to an insured's employee which the employer was liable to pay, becomes "subrogated to all the rights and duties of the employer" and that it may "enforce any such rights in its own name or in the name of the injured employee". It is also equally clear that an insurance carrier, under the Workmen's Compensation Law, has no "other or further rights than those existing in the employer at the time of the injury". Sec. 72–422, S.C.Code.

An insurance carrier, that becomes liable for and pays compensation to an injured employee, is immediately subrogated to the right of the injured employee to recover damages for injuries wrongfully caused him by a third party (Sec. 72–124, S.C.Code); but this subrogated right has these qualifications, (a) that of any amount collected by such a suit the insurance carrier can retain no greater portion thereof than will pay the reasonable expenses and attorney's fees incident to the action and the compensation paid by the insurance carrier to the injured employee, and (b) that the insurance carrier cannot make a compromise settlement of the claim "in the excess of his right of subrogation without the approval of the Commission being first had and obtained." Sec. 72–125, S. C.Code.[1] Thus it is seen that what was

---

[1.] The word "excess" in the quotation from Sec. 72–125, S. C. Code, was changed to "exercise" by the 1955 amendment of said Section. The quotation, as amended, should read, "in the exercise of his right of subrogation without the approval of the Commission being first had and obtained".

intended by the Act in this regard was to give the insurance carrier a means of recouping from the third party, the author of the employee's injuries, the amount paid by it to the injured employee. The Act was not intended as a shield for the wrongdoer or to penalize the injured party, even though it does have the wholesome effect of preventing an injured employee from obtaining two compensations for the same injury.

■ The statute in no place says that the insurance carrier's refusal to protect the rights of the injured employee will operate to destroy the employee's right of action. It only says that failure of the insurance carrier for three months after written request to bring an action against the third party shall be deemed conclusive proof of the carrier's refusal to do so. It is the refusal of the insurance carrier to institute the action for the protection of the rights of the employee, in whatever way that fact may be established, that restores to the injured employee the right to bring the action in his own name. This construction imposes no extra burden or liability on the employer or the employer's insurance carrier; nor does it work an injustice on any third party who may have negligently injured an employee.

■ The Workmen's Compensation Act is a remedial statute. Its primary object is to create and preserve rights of employees who may sustain personal injuries in the course of their employment. There is nothing in the Act which, when legitimately construed, sustains the contention that the framers of the legislation contemplated protecting third parties from liability for personal injuries wrongfully and negligently inflicted on employees of others.

■ It seems to me that it has been conclusively established in this case that the insurance carrier of plaintiff's employer at no time had any intention of instituting an action to protect the plaintiff's rights. Plaintiff's injuries occurred on August 21, 1951. The insurance carrier had six years within which to start a suit to protect plaintiff's rights. It let all but one week of that time expire without doing anything and it was only one week before the statute of limitations would have barred the action that the plaintiff acted to protect himself by instituting this action. The insurance carrier who controlled the qualified subrogation right to institute this action has lost nothing by the plaintiff's endeavor to protect himself when the insurance carrier, which should have done so, failed to do so. An affidavit offered in support of defendant's motion in this case shows that the insurance carrier had closed its file on this case shortly after the compensation award, and that it was never reopened, not even after there had been numerous conferences in regard to instituting such an action.

For the reasons stated and for others that might be stated, it is concluded that defendant's motion to dismiss the action for failure to state a claim upon which relief can be granted should be denied; and it is so ordered.

As to the other prong of defendant's motion, that which seeks summary judgment in its favor, I am persuaded that it should not be granted.

■ The defendant filed in support of the motion the affidavit of its Assistant Superintendent of Lines. Therein it is stated that the defendant "is a public service corporation engaged in the business of generating, transmitting and distributing electricity for public use"; and "that in order to supply electricity to the public it is necessary * * * to employ * * * electric lines over which to transmit electricity * * *". From those statements and others to the effect that it is necessary to extend electric lines from time to time and to maintain them in good repair, the affiant expresses the opinion that the defendant is engaged in the business of constructing electric lines. That to me doesn't quite square with that part of the affidavit quoted above to the effect that the defendant is engaged in the business of generating, transmitting and distributing electricity for public use.

The issue thus tendered by the defendant is not one that should be too readily disposed of on affidavits. It can better be considered and disposed of after the witnesses have been subjected to cross examination. Too often in affidavits facts are so jumbled with conclusions as to make it quite difficult to determine which is not the other.

The motion for summary judgment in the present state of the record should be denied; and it is so ordered.