761 S.E.2d 251

**Joe PERRY and Osteen Publishing Co., Inc., Appellants,**

v.

**Harvin BULLOCK, in his capacity as Sumter County Coroner, Respondent.**

**Appellate Case No. 2012–212669.**

**No. 27419.**

Supreme Court of South Carolina.

Heard Feb. 5, 2014.
Decided July 16, 2014.

Jay Bender, of Baker, Ravenel & Bender, L.L.P., of Columbia, for Appellants.

Andrew F. Lindemann, of Davidson & Lindemann, P.A., of Columbia, for Respondent.

Justice HEARN.

The central issue in this case is whether autopsy reports are "medical records" under Section 30–4–20(c) of the South Carolina Code (2007), and therefore exempt from disclosure under the South Carolina Freedom of Information Act, Title 30, Chapter 4 of the South Carolina Code (the FOIA). The appellants brought a declaratory judgment action under the FOIA requesting production of an autopsy report from a

coroner. The circuit court granted summary judgment in favor of the coroner, finding the records were exempt from disclosure as medical records. We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

Joe Perry, a reporter for *The Item*, a newspaper, sent a FOIA request to Harvin Bullock, the Sumter County Coroner, for the report of the autopsy performed on Aaron Leon Jacobs.[1] Sumter County denied Perry's request on the basis that pursuant to the FOIA, the autopsy report is a "medical record" and is therefore by definition not a public record subject to disclosure.

Perry, along with Osteen Publishing Company, Inc. (collectively, Appellants), filed this declaratory judgment action against Bullock in his official capacity as Sumter County Coroner. Appellants sought injunctive relief, alleging the autopsy report is not a medical record and therefore must be disclosed pursuant to the FOIA. Appellants therefore requested production of the records and attorney's fees.

Bullock answered, asserting the records are exempt from the FOIA as medical records. He also asserted the records are subject to the authorization and consent provisions of the Health Insurance Portability and Accountability Act of 1996, Pub.L. 104–191, 110 Stat.1936 (HIPAA) and thus any state law requiring disclosure of the autopsy report would be preempted by HIPAA.

The parties filed cross motions for summary judgment. In support of his motion, Bullock submitted an affidavit of Dr. Janice Ross, the pathologist who performed the autopsy, which indicated she considered the report to be a medical record. Additionally, Bullock argued the issue was moot because Perry received the autopsy reports from another source.[2] Appellants objected to the court's consideration of

---

1. Jacobs was shot and killed by police officers.

2. In an article Perry wrote after the inception of this suit, he referenced "an autopsy report from Newberry Pathology Associates" which he received from the South Carolina State Law Enforcement Division. However, in his response to Bullock's requests for admission, Perry

Dr. Ross's affidavit, arguing that whether the autopsy report was a medical record within the meaning of the FOIA was a question of law and an expert witness is not competent to opine on matters of law.

After a hearing on the motions and an *in camera* review of the report, the circuit court granted summary judgment in favor of Bullock, holding that autopsy reports are medical records and therefore exempt from the FOIA's disclosure requirements.

## ISSUE PRESENTED

Did the circuit court err in holding the autopsy report is a medical record exempt from the FOIA's disclosure requirements?

## LAW/ANALYSIS

Appellants argue the circuit court erred in granting summary judgment in favor of Bullock by finding the autopsy report is a medical record under section 30–4–20(c). We disagree.

 Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP. "Determining the proper interpretation of a statute is a question of law, and this Court reviews questions of law de novo." *Town of Summerville v. City of N. Charleston,* 378 S.C. 107, 110, 662 S.E.2d 40, 41 (2008).

 "The cardinal rule of statutory construction is to ascertain and effectuate the legislative intent whenever possible." *State v. Baucom,* 340 S.C. 339, 342, 531 S.E.2d 922, 923 (2000). The plain language of a statute is considered the best evidence of the legislature's intent. *Grier v. AMISUB of S.C., Inc.,* 397 S.C. 532, 538, 725 S.E.2d 693, 697 (2012). When interpreting an undefined statutory term, the Court must look

---

stated he "received a necropsy report relating to an autopsy on the body of 'Arron Jacobs'" and that although he believed this was the

to its usual and customary meaning. *Strother v. Lexington Cnty. Recreation Comm'n,* 332 S.C. 54, 62, 504 S.E.2d 117, 122 (1998).

The FOIA was enacted based on the General Assembly's finding "that it is vital in a democratic society that public business be performed in an open and public manner so that citizens shall be advised of the performance of public officials and of the decisions that are reached in public activity and in the formulation of public policy." S.C.Code Ann. § 30–4–15 (2007). Accordingly, the FOIA's essential purpose is to protect the public from secret government activity. *Bellamy v. Brown,* 305 S.C. 291, 295, 408 S.E.2d 219, 221 (1991). Because the FOIA is remedial in nature, it should be liberally construed to carry out the purpose mandated by the legislature. *Campbell v. Marion Cnty. Hosp. Dist.,* 354 S.C. 274, 281, 580 S.E.2d 163, 166 (Ct.App.2003).

The FOIA requires public bodies to disclose public records upon request and defines public records as "all books, papers, maps, photographs, cards, tapes, recordings, or other documentary materials regardless of physical form or characteristics prepared, owned, used, in the possession of, or retained by a public body." S.C.Code Ann. § 30–4–20. However, "[r]ecords such as ... medical records ... and other records which by law are required to be closed to the public are not considered to be made open to the public under the provisions of [the FOIA].... *Id.*

The phrase "medical records" is not defined within the statute and therefore, we turn to its normal and customary meaning. *See, e.g., Branch v. City of Myrtle Beach,* 340 S.C. 405, 409–10, 532 S.E.2d 289, 292 (2000) ("When faced with an undefined statutory term, the Court must interpret the term in accord with its usual and customary meaning."). *Merriam–Webster* defines a medical record as "a record of a patient's medical information (as medical history, care or treatments received, test results, diagnoses, and medications taken)." Merriam–Webster Online, http://www.merriam-webster.com/medical/medical% 20records. Thus, plainly stated, medical records are those records containing medical information.

We find autopsy reports fit neatly within that general understanding of medical records. Section 17–5–5(1) of the

South Carolina Code (2014) defines an autopsy as "the dissection of a dead body and the removal and examination of bone, tissue, organs, and foreign objects for the purpose of determining the cause of death and manner of death." Although the objective of an autopsy is to determine the cause of death, as the statute indicates, the actual examination is comprehensive. Thus, the medical information gained from the autopsy and indicated in the report is not confined to how the decedent died. Instead, an autopsy, which is performed by a medical doctor, is a thorough and invasive inquiry into the body of the decedent which reveals extensive medical information, such as the presence of any diseases or medications and any evidence of treatments received, regardless of whether that information pertained to the cause of death. Accordingly, we find an autopsy report falls within the definition of a medical record as that term is commonly understood.

The reference to "medical records" in other portions of the Code supports that conclusion by indicating the General Assembly considered autopsy reports to be included within that term. Section 17–5–120 of the South Carolina Code (2014), entitled "Availability of *medical records* to coroner of another state," allows for "Records, papers, or reports *concerning the death of a person* on file at any ... medical facility in this State are available to a coroner of another state...." (emphasis added). The title refers to "medical records" and the statute only mentions reports about the death of an individual, which encompasses autopsy reports. *See Garner v. Houck,* 312 S.C. 481, 486, 435 S.E.2d 847, 849 (1993) (holding the title of a statute and heading of a section can be used to clarify ambiguity or doubt in a statute provided the interpretation does not undo or limit the plain meaning of the text). Section 17–5–120 also specifically notes: "The release of these records to the coroner of another state is not prohibited by [the FOIA] or any other provision of law." The reference to the FOIA as a law of *exclusion* indicates the General Assembly assumed the FOIA barred dissemination of these types of reports.

Additionally, the Attorney General's office has long held the opinion that autopsy reports are medical records and exempt from disclosure under the FOIA. *See* 2011 WL 782314 (S.C.A.G. Feb. 23, 2011) ("[T]his Office has consistently opined that autopsy records, including photographs, are confidential

under State law."); 1981 WL 96613 (S.C.A.G. Oct. 27, 1981) ("The details of an autopsy report are of such an intimate, personal nature concerning vivid medical allusions to parts of the human body, their description and indications of prior history. A report of this nature constitutes a medical record which is not available for public consumption.").

Appellants contend a similar argument was made and rejected with regard to the disclosure of death certificates in *Society of Professional Journalists v. Sexton*, 283 S.C. 563, 324 S.E.2d 313 (1984). There, this Court held death certificates are not medical records simply because they contain medical information. Specifically, the Court found that although "death certificates contain a medical certification of the cause of death[,] they are not medical records in the normal sense but are statements of conclusion by persons required by law to make such findings after the death of a citizen of the state." *Id.* at 566, 324 S.E.2d at 314. We find the reasoning of *Sexton* inapplicable here. A death certificate includes no more than the cause of death, if known. In contrast an autopsy is a comprehensive medical examination of a body designed to reveal not only the cause of death, but also the decedent's general medical condition at the time of death including information unrelated to the cause of death. This is the type of information that would necessarily be contained in medical records when a person is alive. We decline to allow a person's death to change the nature of the record into one subject to disclosure under the FOIA.

Appellants also rely on the canon of statutory construction *expression unius est exclusio alterus* to support their contention that the legislature did not intend to exempt autopsy reports as medical records. Specifically, Appellants point to Section 30–4–40(a)(18) of the South Carolina Code (2007) which provides: "A public body may but is not required to exempt from disclosure ... [p]hotographs, videos, and other visual images, and audio recordings of and related to the performance of an autopsy...." Appellants argue that if autopsy reports are medical records, this specific exemption would be unnecessary because these autopsy related materials would already be excluded.

We disagree. The language of section 30–4–40(a)(18) refers to items "of or relating to the performance of an autopsy," not items that are a part of an autopsy report. Autopsy reports contain specific and detailed medical information, but separate pictures or video *of the procedure*, while possibly sensational or salacious, do not make specific medical conclusions regarding the decedent. Accordingly, we find this statute compliments the exclusion of autopsy reports under the FOIA. It further limits access to autopsy information by allowing public bodies to also decline to disclose related images and audio recordings. We therefore find this statute has no bearing on the disclosure of the actual autopsy report.

## CONCLUSION

While cognizant of our obligation to strictly construe the FOIA in favor of disclosure, we are nevertheless compelled here by the plain meaning of the statutory term to conclude that an autopsy report is exempt from the FOIA's disclosure requirement. Although there may be policy concerns militating against this result, that is a matter for the legislature and not for this Court. Accordingly, we affirm the circuit court and hold autopsy reports are excluded from disclosure under the FOIA as medical records.

TOAL, C.J., BEATTY and KITTREDGE, JJ., concur. PLEICONES, J., dissenting in a separate opinion.

Justice PLEICONES.

I respectfully dissent because, in my opinion, an autopsy report is not a medical record within the meaning of the South Carolina Freedom of Information Act (FOIA), S.C.Code Ann. § 30–4–10 *et seq.* (2007 and Supp.2013). I would hold that such a report is subject to disclosure as provided in S.C.Code Ann. § 17–5–280 (2014), and would therefore reverse the circuit court's order and remand for further proceedings.

Section 30–4–20(b) (2014) provides that "records which by law are required to be closed to the public are not made open to the public under [FOIA]...." The initial question, then, is whether autopsy reports are required by law to be closed to the public. In my opinion, they are not closed records,

although the right to access them is limited by the terms of § 17–5–280.

Chapter 5 of Title 17 of the South Carolina Code regulates "Coroners and Medical Examiners." Under this chapter, autopsy is a defined term:

(1) "Autopsy" means the dissection of a dead body and the removal and examination of bone, tissue, organs, and foreign objects for the purpose of determining the cause of death and manner of death.

Section 17–5–5(1) (2014).

Section 17–5–280 provides that autopsy reports be made available to prosecutors and law enforcement agents if "necessary for the performance of [their] official duties." Further, § 17–5–280 provides that an autopsy report **"must be furnished upon request to any party to whom the cause of death is a material issue."** (emphasis supplied). In my view, this statute [3] demonstrates that autopsy records are not required by law to be closed to the public under FOIA, and also establishes the legal standard for release of autopsy reports to the public.

In my opinion, the majority errs when it affirms the circuit court's holding that an autopsy report is a medical record [4] and therefore absolutely exempt from disclosure under FOIA. Nonetheless, the majority is rightly concerned with the public dissemination of potentially exempt information that may be contained in an autopsy report, such as that obtained from the decedent's medical records. Should the autopsy report contain material which is not subject to disclosure, then the coroner or medical examiner to whom the FOIA request is made may redact that information as provided by § 30–4–40(b) (2007).

---

**3.** While this statute specifically refers to medical examiners, it is evident that in counties such as Sumter the coroner is the person responsible for maintaining autopsy records.

**4.** The "Coroners and Medical Examiners" chapter treats medical records in a separate statute and creates an extremely limited exception allowing these otherwise exempt documents to be made available to out-of-state coroners. S.C.Code Ann. § 17–5–120 (2014); see also S.C.Code Ann. § 30–4–40(a)(18) (2007) (recognizing limited exception in § 17–5–120).

I respectfully dissent, and would reverse and remand for further proceedings consistent with the standard for dissemination of autopsy reports.